697 So.2d 880 (1997)
Robert W. SIPKEMA, II and Kathlyn K. Sipkema, etc., Appellants,
v.
REEDY CREEK IMPROVEMENT DISTRICT, etc., et al., Appellee.
No. 96-1842.
District Court of Appeal of Florida, Fifth District.
June 20, 1997.
Rehearing Denied August 8, 1997.
Eric H. Faddis of Faddis, Oldham & Smith, P.A., Orlando, for Appellants.
Susan K. McKenna and Joanne B. Lambert of Garwood, McKenna, McKenna & Wolf, P.A., Orlando, for Appellee Reedy Creek Improvement District.
David L. Evans and Kurt E. Thalwitzer of Mateer & Harbert, Orlando, for Appellee Walt Disney World, Co.
John R. Hargrove and W. Kent Brown of Heinrich, Gordon, Hargrove, Weihe & James, P. A., Fort Lauderdale, Amicus Curiae for Appellee Sentinel Communications Company and Sun-Sentinel Company.
Robert A. Butterworth, Attorney General, and Louis F. Hubener, Assistant Attorney General, Tallahassee, Amicus Curiae for Appellee State of Florida.
*881 Arthur J. England, Jr., and Joe N. Unger of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Amicus Curiae for Appellee The Florida Chamber of Commerce.
PER CURIAM.
AFFIRMED.
COBB, and THOMPSON, JJ., concur.
HARRIS, J., concurs and concurs specially with opinion.
HARRIS, Judge, concurring specially:
I concur in the affirmance of Judge Perry's reasoned and record-supported judgment. However, because appellants rely on News-Journal Corporation v. Memorial Hospital  West Volusia, 695 So.2d 418 (Fla. 5th DCA 1997), and News and Sun-Sentinel Co. v. Schwab, Twitty & Hanser Architectural Group, Inc., 596 So.2d 1029 (Fla.1992), as authority for their position that the security manual, traffic citations and accident reports prepared by employees of Walt Disney World Company (Disney) are subject to Chapter 119 public records disclosure, it is appropriate that we distinguish Memorial Hospital and analyze the facts of this case according to the factors set out in Schwab.
Looking first at the Memorial Hospital decision: The West Volusia Hospital Authority was created for the express purpose of providing hospital care for the inhabitants of its taxing district. In furtherance of this purpose, the Authority constructed hospital facilities using tax revenues, and operated the hospital for a number of years by supplementing the hospital income with additional tax revenues. When it determined that a not-for-profit corporation could provide more efficient and economic hospital care, the Authority leased its facilities to Memorial Hospital in order that Memorial Hospital could replace the Authority in providing the hospital care that it had previously provided. We held in Memorial Hospital that under the Schwab factors, Memorial Hospital was acting for (in place of) the West Volusia Hospital Authority and was therefore subject to public disclosure and open meetings requirements.
In the present case, however, not only was the Reedy Creek Development District not created for the purpose of providing law enforcement services for the inhabitants of the district, but its enabling act does not authorize it to perform that function. Reedy Creek is neither a county nor a city nor a substitute therefor. Reedy Creek does have the authority under its charter to "enter into agreements with any ... firm ... for the furnishing by such ... firm ... any facilities and services of the type provided for in this Act to the District and for or on behalf of the District to persons, firms, corporations and other public or private bodies and agencies to whom the District is empowered under this Act to furnish facilities and services..." It seems to follow that if the District is not empowered to provide police protection to the inhabitants of the district, it cannot contract for others to provide it in its stead. One can only imagine the outcry of the owners of the 3% of the property within the boundaries of Reedy Creek not owned by Disney if they were suddenly assessed their proportionate share of the costs of the 800 security personnel now serving Disney at its complex located within the Reedy Creek Development District.
Appellants point to the contract between Reedy Creek and Disney which provides that Disney will perform "such other services as the District may, from time to time, deem necessary to meet its needs for security ..." It is urged that by this agreement, Disney has agreed to perform law enforcement on behalf of Reedy Creek throughout the district. The stretch is simply too great. First, the trial court found that security services referred to by the agreement meant "routine premises security in the nature of what is generally termed `night watchman' services." The record supports this finding. Appellants have not sought the records relating to this night watchman service. If they had, a different analysis might be required. Second, while the District inherently has the same right as any property owner to protect its own property, it has, as indicated above, no authority to provide law enforcement for anyone. This is consistent with the court's interpretation of the word "security" in the *882 agreement. Third, Disney simply does not provide "law enforcement" services. As the trial judge found, Disney issues only Mickey Mouse traffic citations. Such citations are issued only to Disney employees, in order to encourage them to obey the speed limits and to otherwise drive safely on Disney property. The citations have no force of law  no fines are authorized and no points are assessed. The citations are placed in the employee's personnel file for appropriate action based on the number and severity of the violations. Non-employees may be stopped by Disney security employees in order for the employees to caution such persons to slow down or otherwise drive more safely, but citations are not issued to non-employees. The actions of repeat or continuing non-employee offenders are reported to deputies of the Orange County Sheriff's Department. This is no more law enforcement than the action of one asking his teenage neighbor to slow down while driving in the neighborhood because there are small children playing.
Indeed, the law imposes on Disney the obligation to take such action as it appropriately can in order to reduce the hazards within its complex. For example, the Howard Johnson Motor Lodge was held civilly liable in Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla.1983), because it failed to have sufficient security personnel on its own property under the circumstances of that case. Municipalities across the state have enacted ordinances requiring 24-hour convenience stores to provide security, usually in the form of additional personnel. It cannot be said that private employers who provide additional security on their own property, whether gratuitously, pursuant to a labor agreement, or in compliance with governmental action, are somehow providing "law enforcement" on behalf of the local police department or the county sheriff's office and thereby subject their records to public scrutiny.
Looking at the Schwab factors, as the trial judge very ably did, there is no support for the proposition that Disney was providing law enforcement on behalf of Reedy Creek. Reedy Creek did not create or participate in the creation of Disney. To the contrary, Disney prevailed upon the legislature to create Reedy Creek for the benefit of its property and for the benefit of neighboring property. The fact that the legislature acted upon the initiative of Disney in creating Reedy Creek is not a Schwab factor.
There is no evidence of public funding of the Disney security force. Although a relatively small amount is paid by Reedy Creek for the "night watchman" services performed by Disney, there is no evidence of a contribution toward the greater "law enforcement" services relied on by appellants herein.
The trial court found, and we agree, that there is no evidence of commingling of funds by Disney and Reedy Creek. Nor is there any evidence that Reedy Creek contributed anything to the cost of the "venture" of providing security on the Disney complex. In Memorial Hospital, we held that the actual commingling of public and private monies into a single bank account was not required in considering this factor if public funds were "commingled" with funds of a private company in acquiring services or property for the private company.
Although a portion of Disney's security activities is conducted on roads belonging to Reedy Creek, such activity is not law enforcement. But it is more in the nature of the duty imposed by the court in Gunlock v. Gill Hotels Co. Inc., 622 So.2d 163 (Fla. 4th DCA 1993): the "duty to provide its guests with reasonably safe passage across the highway."
The greater security role assumed by Disney and provided on its complex is not a part of Reedy Creek's decision-making process. Indeed, Reedy Creek has no authority to make a decision about providing security or law enforcement for others.
The greater security activities performed by Disney would not be provided by Reedy Creek if Disney failed or ceased to provide it. Reedy Creek simply has no authority to provide such services for the inhabitants of its district.
Reedy Creek does not control Disney. In fact the contrary is true. Because Reedy Creek is governed by a one acre, one vote rule and because Disney owns 97% of the *883 acres in Reedy Creek, Disney has substantial control over the operation of Reedy Creek. But this, standing alone, is not a Schwab factor. Certainly if Disney exerted its control to obtain a contract that met the Schwab test, then its records as they relate to that activity would be subject to the public records disclosure requirements. For example, if Disney, under an agreement with the Reedy Creek Development District Board of Supervisors, undertook to do the reclamation, drainage and erosion control activities throughout the district which the Reedy Creek charter provided that Reedy Creek would do, and certainly if Disney received public funds for this activity and used publicly owned facilities and equipment to do it, the Disney records relating to this activity would be open for inspection. Such is not the case here.
The trial judge was right in his analysis and ruling, and I concur in the affirmance of his judgment.